## GEORGE A. ATKINS v. JEROME SHERBINO.

### *Parent and Child. Wages of Minor.*

When a minor son makes a contract for his services on his own account, and his father knows of it and makes no objection, the father cannot recover of the employer wages which he has paid to the son; and in such a case the question is not whether the son was emancipated or not, but whether the father knew of the contract and made no objection.

ASSUMPSIT. Heard on a referee's report, March Term, 1885, Washington County, POWERS, J., presiding. Judgment *pro forma* for the plaintiff.

The action was brought to recover the wages for the work of the plaintiff's minor son. In the fall of 1881, the plaintiff had some trouble with his said son, Watson Atkins, then about fifteen years old, and during the altercation told the son that "he had better take his clothes and start."

Thereupon said Watson took his clothes, left his father's home, with his knowledge, and went to one of the neighbors. The plaintiff agreed to be responsible for the son's board. It also appeared, that the son worked some that fall, and with the plaintiff's knowledge and without his objection, took such wages as he earned; that said Watson by the advice of his father attended school the next winter; that his father got him a suit of clothes and such books as he needed; that the next season he worked for one Crane, who refused to pay him, and thereupon the son applied to his father, who brought a suit, and received $29 on settlement of it; that the plaintiff kept $19 of this and gave $10 to Watson; that he also worked the same season for one Eagan; that he paid the wages to the son; but before Eagan paid him anything, he applied to plaintiff, and plaintiff told him "All he wanted was for Watson to take care of himself and save his wages, and if he paid him his wages it would be all right, but if he undertook any Jerry Crane tricks on him it would not be all right."

In the spring of 1883, said Watson hired out to the defendant for six months at $25.per month, and completed his contract, his wages amounting to $142, after deducting lost time. The referees found:

"Before going to work for defendant, Watson went to his father's house and told his father he had hired out to defendant for six months at $25 per month, and was to commence his work the next week. Plaintiff made no objection and said nothing to Watson about claiming his wages, but told said Watson 'he was getting good wages.'

"At the time said Watson made said contract with defendant, he was about sixteen years old and it must have been apparent to defendant that he was a minor, though nothing was said between them upon that subject.

"Defendant knew nothing about the boy's father, or whether he had any father, and he made no inquiries of the boy or anybody else about the boy's father.

"While at work for defendant, before his time of service was completed, said Watson took up $72 of his wages,

about $45 of which he expended for necessary clothing, and the remainder of the $72, he expended for some purpose which did not appear in evidence.

"When he had finished work [Oct. 30, 1883] defendant paid him in money the $70 due for his labor, and he went to his father's house, having said $70 in his pocket. Plaintiff asked him if he had taken up his wages and said Watson replied that he had been paid in full, but declined to disclose what he had done with the money, or how much he had left. Plaintiff than told Watson he was going to demand his wages of defendant. Watson told plaintiff that 'defendant had paid him up square and he did not want plaintiff to make any trouble about it'; that if plaintiff wanted some money he would let him have it; but plaintiff insisted that he was going to demand of defendant the entire wages, and soon after brought this suit."

*Stewart & Wilds* and *Pitkins & Huse*, for the defendant.

The plaintiff turned his minor son from home and obliged him to support himself by his own labor. The son necessarily had to contract for his own services on his own account. He did so contract with the defendant, and the plaintiff knew of the contract and did not object to it.

A minor son certainly has a right to take his wages when allowed by his father to contract for them on his own account. *A fortiori* has he such right when compelled by his father's act to do so. *Nightingale* v. *Withington*, 15 Mass. 272; *Whiting* v. *Earle*, 3 Pick. 201; *Wodell* v. *Coggeshall*, 2 Met. 89; *Morse* v. *Welton*, 6 Conn. 547; *Armstrong* v. *McDonald*, 10 Barb. 300; *Farrell* v. *Farrell*, 3 Houst. 633; *Cloud* v. *Hamilton*, 11 Humph. 104; Tyl. Inf. 200-202. The Vermont cases are not in conflict, but as far as they go are consonant with the authorities cited. *Chilson* v. *Philips*, 1 Vt. 41; *Chase* v. *Elkins*, 2 Vt. 290; *Chase* v. *Smith*, 5 Vt. 556; *Varney* v. *Young*, 11 Vt. 258; *Tillotson* v. *McCrillis*, 11 Vt. 477; *Perlinau* v. *Phelps*, 25 Vt. 478; *Bray* v. *Wheeler*, 29 Vt. 514; *Winn* v. *Sprague*, 35 Vt. 243.

*Senter & Kemp* and *Geo. W. Wing*, for the plaintiff.

Upon the facts found by the referees, only one question is of importance, as all other questions to be raised depend primarily on this one, which is, Do the facts found and reported, constitute an emancipation of the son of the plaintiff?

The plaintiff here seeks to recover for the services of his minor son.

The defence is made upon the ground that the son was emancipated, and that his discharge of the claim of the plaintiff, is valid and sufficient.

It is not claimed that there was any express contract of emancipation, or that there was any giving or sale of the minor's time or release of the plaintiff's claim to the earnings of the son; but it is contended that the facts found by the referees show such a course of dealing with the son as amounts in law to a release of his claim for such services and constitute his full emancipation.

Upon the facts stated in the report, we claim, first; that there was no express contract of emancipation, and second; that the facts stated do not amount in law to emancipation.

The report shows conclusively that the father never released his control over the person of the son, or his right to his wages. It is true, that, on one or two occasions, he consented that the parties for whom his son had contracted to labor might pay for such services directly to the son. This consent, of itself, would not constitute emancipation, and we insist that it does not amount to that when coupled with the circumstances under which the said Watson left his father's house. After he left his father's house the case shows that the plaintiff had not released his control over the person of his son or driven him away to shift for himself.

The plaintiff became responsible to Grant for his son's board.

We therefore insist that the circumstances upon which

the defendant relies in defence can avail him nothing; because he in no manner relied upon them at the time of making the contract or at the time he settled with the son for his services, unless the court are satisfied that these circumstances amount in law to an emancipation. *Nightingale* v. *Withington,* 15 Mass. 272; *Abbott* v. *Converse,* 4 Allen, 530; *Chilson* v. *Philips,* 1 Vt. 41; 35 Vt. 243; *Baker* v. *Baker,* 41 Vt. 55; *Varney* v. *Young,* 11 Vt. 258; *Perlinau* v. *Phelps,* 25 Vt. 478; *Mason* v. *Hutchins,* 32 Vt. 780.

The opinion of the court was delivered by

VEAZEY, J. In pronouncing the judgment of the court in *Whiting* v. *Earle,* 3 Pick. 201, PARKER, Ch. J., said: "We go so far as to say, that where a minor son makes a contract for his services on his own account, and the father knows of it and makes no objection, there is an implied assent that the son shall have his earnings." We think this proposition is sound and merits emphatic approval. It is simple justice, without danger of working injustice. It does not interfere with the right of the father, or in case of his death, the mother, to the earnings provided he seasonably demands them. It does prevent the wrong attempted here, and likely to occur under a different rule. It is abundantly sustained by the authorities cited in the defendant's brief. We do not think it is necessary that the employer should have made the contract with, and payment to, the son upon knowledge of his total or partial emancipation by the father, in order to be entitled to make this defence. The point of the proposition is that the father knows of the contract and makes no objection. We do not decide that the defence could not be put on other grounds. This is sufficient.

The *pro forma* judgment is reversed. Judgment for the defendant for costs.